IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MAURICE JAMES SJOBLOM, on behalf of himself and a class of employees and/or former employees similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, LLC, and CHARTER COMMUNICATIONS (CCI), INC. (Fict Name), A/K/A CHARTER COMMUNICATIONS, INC. (Corp Name),<br><br>  Defendants. | Case No.: 07-C-0451-C |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

**I.   INTRODUCTION**

Plaintiff's Memorandum in Support of Plaintiff's Motion for Protective Order ("Plaintiff's Brief") contains what purports to be a "Statement of Facts." Plaintiff's Motion for Protective Order ("Plaintiff's Motion"), however, is not based upon facts, but rather is based almost entirely upon two affidavits which repudiate the prior sworn declarations of David E. Zrout ("Zrout") and Matthew Tuescher ("Tuescher"). Plaintiff's Brief also grossly mischaracterizes the circumstances surrounding the pre-interview notice provided to the employee declarants as well as the manner in which the employee interviews were actually conducted. Defendants' legal representatives informed each person being interviewed that both the interview itself and the signing of a declaration were voluntary and all declarants were given

the opportunity to review and correct any errors in their declarations before they signed them. Despite Plaintiff's assertions to the contrary, Defendants did not engage in any form of coercion, intimidation, or overreaching. Consequently, Plaintiffs Motion should be denied in its entirety.

## II. LEGAL ANALYSIS

Defendants submitted 60 declarations from current employees in support of their opposition to Plaintiff's Motion for Conditional Certification of the FLSA National Class and Court Facilitation Motion ("Plaintiff's Certification Motion"). Plaintiff has moved to strike these declarations and to prevent further contact between Defendants and their employees concerning the subject matter of this lawsuit. Plaintiff bases his argument on the affidavits of only two employees from whom declarations were taken by Defendants -- Zrout and Tuescher. Those affidavits, however, when properly analyzed, do not provide any basis for the sweeping requests made by Plaintiff in his Motion.

### A. Pre-Certification Contact with Putative Class Members is Clearly Proper.

In a collection action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, as in a class action under Rule 23 of the Federal Rules of Civil Procedure, each side has the right to communicate with putative class members. See EEOC v. Mitsubishi Motor Manufacturing of America, Inc., 102 F.3d 869, 870 (7th Cir. 1996).[1] It is well established that putative or absent class members may be contacted by the defendant during the pre-certification phase of a putative class action or a collective action under the FLSA. See Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981)(Rule 23 class action case); Hoffman-LaRoche Inc. v. Sperling, 493 U.S. 165, 171 (1989)(FLSA collective action case). While courts have the authority to restrict communications

---

[1] *See also*, ABA Comm. On Ethics and Prof'l Responsibility, Contact by Counsel with Putative Members of Class Prior to Certification," Formal Op. 07-445 (April 11, 2007)("Both plaintiff's counsel and defense counsel have a legitimate need to reach out to potential class members regarding the facts that are the subject of the potential class action, including information that may be relevant to whether or not a class should be certified.").

between parties and putative class members, that authority is only to be exercised when necessary to prevent abuse of the class or collective action process. Id. Moreover, the movant bears the burden of showing that "a particular form of communication at issue is abusive in that it threatens the proper functioning of the litigation." Kay Co., LLC v. Equitable Production Co., 2007 WL 275874 (S.D.W.Va. Sept. 21, 2007). In Gulf Oil, the Supreme Court stated that an order restricting counsel from communicating with potential class members "involved serious restraints on expression." 452 U.S. at 104. Consequently, "an order limiting communications between parties and potential members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Id. at 102. Plaintiff's submissions do not create the clear record that would allow for the specific findings warranting such an order.

    **B.**    **Every Person Who Was Interviewed Was Provided With and Signed a Voluntary Interview and Notice Form.**

Plaintiff boldly states as fact the following: "The Charter lawyers never provided Mr. Zrout or Mr. Tuescher with a witness consent form explaining their rights . . . ." (Plaintiff's Brief at p. 7). Plaintiff further maintains that Defendants should have provided such a witness consent form – one modeled on the witness consent form attached as Exhibit D to the Affidavit of Timothy D. Edwards. (Plaintiff's Brief at p. 11). Apparently, Plaintiff's counsel was unaware at the time Plaintiff's Motion was filed that the all interviewees, including Zrout and Tuescher, were provided with a Voluntary Interview and Notice Form ("Voluntary Interview Form") prior to being interviewed or asked to review and execute a declaration.[2] The Voluntary Interview Forms provided the interviewees with full notice concerning, among others subjects, the following:

---

[2] Copies of the Voluntary Interview Forms signed and dated by Zrout and Tuescher are attached as Exhibits A and B, respectively.

3

<u>The Personal Identity of the Interviewer</u>: "My **name** is Mark DeLoach/Chris Harris." (<u>See</u> Exhibits A and B at ¶ 1, respectively)(emphasis added).

<u>The Capacity of the Interviewer</u>: "I am an **attorney** . . . . . (<u>See</u> Exhibits A and B at ¶ 1, respectively)(emphasis added).

<u>The Affiliation of the Interviewer</u>: "I am an attorney **representing Charter Communications, LLC and Charter Communications, Inc.** (referred to collectively in this notice as "Charter"). (<u>See</u> Exhibits A and B at ¶ 1, respectively)(emphasis added).

<u>The Nature of the Lawsuit</u>: "Our law firm represents Charter in **a lawsuit, which is styled as a class and collective action, brought against it by a technician working out of one of Charter's locations.**" (<u>See</u> Exhibits A and B at ¶ 1, respectively)(emphasis added).

<u>The Non-representation of the Interviewee</u>: "**We do not represent you**, or any of the other individual employees that are being interviewed." (<u>See</u> Exhibits A and B at ¶ 1, respectively)(emphasis added).

<u>The Possible Use of the Information Gathered During the Interview</u>: "If you choose to speak with us today the information you provide may be used by the Company **to show that you are not similarly situated to the employee who has filed this action. In the lawsuit, the employee claims the he and other similarly situated employees have not been properly paid for all his working time, including overtime.** (<u>See</u> Exhibits A and B at ¶ 1, respectively)(emphasis added).

<u>The Purpose of the Interview</u>: "We are interviewing Charter employees to help us better understand the issues in the lawsuit, **to obtain evidence to support the company's defenses, to demonstrate the employees are not similarly situated and have been properly paid for all compensable working time** and to determine if other employees have any information relevant to the claims in this lawsuit." (<u>See</u> Exhibits A and B at ¶ 2, respectively)(emphasis added).

<u>The Interviewee's Absolute Right to Decline to Participate in the Interview, Limit the Scope of the Interview, and/or Terminate the Interview</u>:

> "You have **no obligation** to talk to me. (<u>See</u> Exhibits A and B at ¶ 3, respectively)(emphasis added).

> \*\*\*

> "If I ask you a question that you do not wish to answer, **just say so**." (<u>See</u> Exhibits A and B at ¶ 3, respectively)(emphasis added).

> \*\*\*

> "You are **free** to end our discussion at any time." (<u>See</u> Exhibits A and B at ¶ 3, respectively)(emphasis added).

4

> <u>The Defendants' Non-retaliation Policy</u>: "Regardless of your decision [concerning participation in the interview], you will **not be penalized in any way**, nor will you receive any benefit from Charter based on any information you do or do not provide to me." (<u>See</u> Exhibits A and B at ¶ 3, respectively)(emphasis added).
>
> <u>The Use of the Information</u>: "The information you provide will be compiled with information from other interviews, and will be used by our firm to provide legal advice to the Company and **to assist in its defense of the lawsuit**." (<u>See</u> Exhibits A and B at ¶ 5, respectively)(emphasis added).

The Voluntary Interview Forms used in this instance closely follow in form and substance the "Witness Consent Form," which Plaintiff offers as a model of an appropriate disclosure. Contrary to Plaintiff's blatantly false assertions, Defendants' counsel did "follow its own advice" (Plaintiff's Brief at p. 11) concerning providing pre-interview disclosures to its employees, Defendants provided all of the interviewees with a clear, written notice regarding the issues. Perhaps Plaintiff's counsel themselves should not be blamed for the false assertions set forth in their brief as they apparently are based upon the following false statements set forth in the affidavits of Zrout and Tuescher:

> Neither Charter nor its attorneys gave me or asked me to sign any type of consent from which explained by potential rights in the lawsuit, or rat I may be forfeiting rights in the lawsuit. <u>I did not sign anything other than the statement that I understand Charter later submitted to the Court</u>. (See Affidavits of Zrout and Tuescher at ¶¶ 9 and 10, respectively, which are Exhibits A and B to the Affidavit of Timothy D. Edwards, which is Exhibit A to Plaintiff's Brief).

These obviously false statements call into very serious question the credibility of the affiants Zrout and Tuescher. Consequently, this Court should look at all of the statements in their affidavits with a jaundiced eye.

    C.    **Defendants Did Not Engage in Any Abusive, Coercive or Deceptive Communications During the Interviews.**

Plaintiff argues that the Charter's position as the witnesses employer has placed them in such a position of "power" that communications with their employees concerning the subject

5

matter of this lawsuit are "inherently coercive" and should be closely scrutinized by the Court. This is simply not the law. Numerous courts have rejected the notion that coercion necessarily arises, *ipso facto*, out of the employment relationship. For example, in McLaughlin v. Liberty Mutual Ins. Co., 224 F.R.D. 295 (D. Mass 2004), the court rejected the argument that communications between employers and employees should be restricted because of the "inherently coercive" nature of the relationship. In doing so, the court stated: "Absent some showing of past abuse, or of an intention of future abuse, neither of which is suggested by plaintiffs, there is no reason to chill the defendant and its agents in its pursuit of the truth." Id. at 299; see also Wiginton v. Ellis, 2003 WL 22232907, *3 (N. D. Ill. Sept. 6, 2003) (refusing to accept that a potentially coercive situation exists due to the "inherent coerciveness of the employer-employee relationship); Basco v. Wal-Mart Stores, Inc., 2002 WL 272384, *3 (E.D. La. 2002)(rejecting existence of inherently coercive nature of relationship between employer and employee); Burrell v. Crown Cent. Petroleum, Inc., 176 F.R.D. 239, 244-245 (E. D.Tex.1997) (requiring more than a potential for coercive conduct which arises out of employer-employee relationship).

Plaintiff cannot obtain a protective order without showing either "actual harm" from the communication or that the communication is false, misleading, or confusing. Plaintiff has done nothing of the sort.[3] Plaintiff's primary argument is that Defendants failed to inform interviewees that they were being interviewed in connection with a class action lawsuit in which they might be eligible to participate. For example, Plaintiff states: "As Mr. Zrout and Mr. Tuescher explain, Charter did not tell the prospective affiants that Sjoblom had filed a class action lawsuit . . . ." (Plaintiff's Brief at p. 10). Even a cursory review of the Voluntary

---

[3] On the other hand, Plaintiff's counsel have admitted that affidavits filed in support of Plaintiff's Motion are factually inaccurate. (See Letter from Michael J. Modl to the Honorable Barbara B. Crabb, dated December 10, 2007). A copy of that letter is attached as Exhibit C.

Interview forms, which Zrout and Tuescher signed, reveals this claim to be patently false:

> Our law firm represents Charter in a lawsuit, which is styled as **a class and collective action**, brought against it by a technician working out of one of Charter's locations. (See Exhibits A and B at ¶ 1, respectively)(emphasis added).
>
> \*\*\*
>
> "We are interviewing Charter employees to help us better understand the issues in the lawsuit, to obtain evidence to support the company's defenses, to demonstrate **the employees are not similarly situated and have been properly paid for all compensable working time** and to determine if other employees have any information relevant to the claims in this lawsuit." (See Exhibits A and B at ¶ 2, respectively)(emphasis added).

Defendants could not have been more forthcoming about the nature of the lawsuit as a purported class and/or collective action. Plaintiff's repeated suggestions to the contrary are, therefore, disingenuous. Plaintiff has also argued that Defendants organized and conducted the interviews under false pretenses. This too is poppycock. The declarants were asked to attend trainings and meetings. Mr. Zrout's own original affidavit makes clear that the training actually occurred and that he had a meeting with an attorney, in which he voluntarily took part. There was nothing false or misleading about the training; it occurred.

    D.    **The Declarations Submitted by Defendants Are Appropriately Before the Court.**

Perhaps most importantly, Plaintiff has not shown, despite his unsupported allegations of coercion and abuse, that any of the declarations are false and inaccurate, except perhaps those of Zrout and Teuscher. In support of his claim that Zrout and Teuscher's declarations are false and inaccurate, Plaintiff must rely on the repudiating affidavits of Zrout and Teuscher in which they effectively ask the Court to disregard their declarations because they did not take the time to carefully read them before they signed them. (See Affidavits of Zrout and Teuscher at ¶ 12

7

attached as Exhibits A and B, respectively, to the Affidavit of Timothy D. Edwards). However, the very declarations that they initially signed belie these contentions:

> This declaration is given voluntarily. I have not been promised any benefit, coerced or threatened in any manner in exchange for the testimony in this declaration." (Zrout and Teuscher Declarations at ¶ 1).

***

> I understand that I am not required to provide the testimony in this declaration. I further understand that an employee of Charter has filed a lawsuit claiming that he was not paid for all hours worked, and that this declaration may be used in that lawsuit. I further understand that it would be a violation of Charter's policy for anyone to retaliate against me for providing or refusing to provide the testimony in this declaration. (Zrout and Teuscher Declarations at ¶ 14).

***

> Prior to signing this declaration, I was provided a full opportunity to carefully review this declaration and freely make any corrections and additions of any kind. I verify that the information I have provided in this declaration is true and correct. (Zrout and Teuscher Declarations at ¶ 14).

Reason dictates that Zrout and Teuscher's claimed failure to read their declarations before they signed them cannot be imputed to all of the other declarants. To do so would be tantamount to accusing all of the declarants of perjury since each verified that everything in the declaration was true and correct pursuant to 28 U.S.C. § 1746. Perhaps, Zrout and Tuescher never bother to carefully read anything that they sign, but whether this was actually the case with their declarations, which they have repudiated only after being contacted by Plaintiff's counsel, is highly debatable. However, Zrout and Teuscher clearly did not read their own affidavits which were filed in support of Plaintiff's Motion in which they willingly and voluntarily swore that Defendants never told them that the subject lawsuit was a class action. They were willing to do this despite the fact that both of them signed Voluntary Interview forms which clearly describe this lawsuit as being brought as class and/or collective action. (See Exhibits A and B at ¶ 1,

8

respectively)(emphasis added). For this reason alone, their self-serving affidavits should not be considered by the Court and the pending Motion rejected out of hand.

Plaintiff's Motion to strike all of the declarations by casting doubt on the credibility or voluntary nature of his co-workers' declarations by proffering the repudiating affidavits of Zrout and Teuscher badly misses the mark. Prior to being interviewed, each of the declarants was provided with, and executed, a voluntary interview notice containing the information set forth above.[4] Further, each declarant signed acknowledgments that they were signing the declarations voluntarily without promises of benefits, coercion, or threats. (See Exhibits 6-65 to Defendants' Opposition to Plaintiff's Expedited Motion for Conditional Certification of the FLSA National Class and Court Facilitation of Notice) Under such circumstances, the declarations are appropriately before the Court.

E.   **There Is Nothing Improper About Obtaining Declarations from Employees.**

Defendants conduct in obtaining the witness declarations was entirely proper. As demonstrated above, Defendants' legal representatives were careful to ensure that all declarants received full disclosure concerning the interview and particularly the fact that the interview was completely voluntary and could be stopped at any time. Further, they were specifically informed that they could review their declaration and make changes before signing the declaration. Finally, they were told that Defendants would not reward anyone who chose not to participate in the interview/declaration process or retaliate against anyone who chose not to do so. Case law makes clear that simply interviewing and obtaining sworn statements from employees who are putative class members is entirely proper. See Pruitt v. City of Chicago, 2004 WL 1146110 (N.D. Ill, May 20, 2004)(refusing to strike affidavits obtained by employer from members of the putative class) Bell v. Addus Healthcare, Inc., 2007 WL 2752893, at * 3 (nothing improper

---

[4] Copies of the Voluntary Interview Notices executed by the declarants are attached as Composite Exhibit D.

about interviewing employees on a voluntary basis as the employer as the "right to fully investigate the case"); Basco WL 272384, at *3.

### G. The Requested Notice to All Potential Class Members and/or Declarants is Completely Unwarranted.

Plaintiff has requested that the Court order Defendants to send a notice to all potential class members and/or declarants which includes, among other things, the following statement: "You are hereby notified that these declarations will not be considered by the Court and that you may be permitted to opt-in to this national class action even if you provided such a declaration." Because Defendants acted completely properly in obtaining the subject declarations, there is no legal basis or requiring Defendants' to engage in the compelled speech requested by Plaintiff. See Gulf Oil, 452 U.S. at 104 (restrictions on pre-certification communications must be as narrowly tailored as possible to protect constitutional guarantees of freedom of speech).

### III. CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court deny Plaintiff's Motion in its entirety.

This 11th day of December, 2007.

*/s/ Jacqueline E. Kalk*
Jacqueline E. Kalk
Georgia Bar No.: 406238
LITTLER MENDELSON, P.C.
80 South Eighth Street
Suite 1300
Minneapolis, MN 55402
Telephone: (612) 630-1000

Lisa A. Schreter
Georgia Bar No. 629852
Bradley Strawn
Georgia Bar No. 004419
LITTLER MENDELSON, P.C.
3348 Peachtree Road, N.E.,
Suite 1100
Atlanta, Georgia 30326-1008
Telephone: (404) 233-0330

**ATTORNEYS FOR DEFENDANTS**

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MAURICE JAMES SJOBLOM, on behalf of himself and a class of employees and/or former employees similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, LLC, and CHARTER COMMUNICATIONS (CCI), INC. (Fict Name), A/K/A CHARTER COMMUNICATIONS, INC. (Corp Name),<br><br>Defendants. | Case No.: 07-C-0451-C |

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 11, 2007, I electronically filed the foregoing with the Clerk of Court and sent service copies via electronic and first class mail, postage prepaid to the following:

Robert J. Gingras
GINGRAS, CATES & LUEBKE, S.C.
8150 Excelsior Drive
Madison, WI 53701-1808
gingras@gcllawyers.com

Kathleen A. Wagner
WAGNER LAW OFFICES, S.C.
4513 Vernon Blvd., Suite 10
Madison, WI 53705-4964
attorney@execpc.com

Michael J. Modl, Esq.
Axley Brynelson, LLP
2 Mifflin Street, Suite 200
Madison, WI 53703
mmodl@axley.com

/s/ Jacqueline E. Kalk
Jacqueline E. Kalk

Firmwide:83823042.1 047830.1004