IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MAURICE JAMES SJOBLOM,
on behalf of himself and a class of employees
and/or former employees similarly situated,                    OPINION AND ORDER

                              Plaintiff,                              3:07-cv-0451-bbc

              v.

CHARTER COMMUNICATIONS, LLC,
CHARTER COMMUNICATIONS (CCI),
INC. and CHARTER COMMUNICATIONS,
INC.

                       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        This is a civil action for monetary, declaratory and injunctive relief under the Fair

Labor Standards Act, 29 U.S.C. §§ 201-219, and Wisconsin wage and hour laws, Wis. Stat.

chs. 103 and 104 and §§ 109.01-109.11.   Plaintiff Maurice Sjoblom contends that

defendants violated federal and state law by not compensating him for certain work activities

related to his assigned vehicle and equipment and failing to properly calculate and pay sales

commissions.   Plaintiff also alleges that defendants failed to properly record the hours that

he worked, in violation of state law.   Plaintiff seeks to bring an opt-in nationwide collective

action under the Fair Labor Standards Act on behalf of himself and similarly situated current

and former employees of defendants.   29 U.S.C. § 216(b).   At the same time, plaintiff wants

to bring an opt-out Rule 23 class action on behalf of 1) a class of all current and former Wisconsin employees of defendants who allegedly were denied compensation for their work activities related to maintaining their assigned vehicles and equipment and 2) a subclass of Wisconsin citizens currently and formerly employed by defendants as a Broadband Technician I, II or III or a Systems Technician I or II who allegedly were not compensated for work activities reserved for higher-paid, higher-ranked employees.  The court has jurisdiction over the federal claim.  28 U.S.C. § 1331.  Because plaintiff and defendants are citizens of different states, more than $5,000,000 is in dispute and the proposed class numbers more than 100 individuals, jurisdiction over the state law claims is present under 28 U.S.C. § 1332(d) (commonly known as the Class Action Fairness Act of 2005).

Before the court are several motions: 1) defendants' motion to dismiss all of plaintiff's state law class claims under Fed. R. Civ. P. 12(b)(6), strike them under Fed. R. Civ. P. 12(f) or eliminate them pursuant to Fed. R. Civ. P. 23(d)(4); 2) plaintiff's motion for conditional certification of the Fair Labor Standards Act national class and court facilitation of notice; 3) defendants' motion to strike the affidavits of Maurice Sjoblom and Jesse Taylor Cone; 4) defendants' motion to strike plaintiff's expert report; and 5) plaintiff's motion for leave to file a second amended complaint.  (Plaintiff also has filed a motion for a protective order, which I will address in a separate order.)  On December 13, 2007, the court held a hearing on the motions.

2

Because I find that plaintiff's state law class action claims are not incompatible with his federal collective action claims and that plaintiff adequately pleaded his state law class action claims pursuant to the requirements of Rule 23, I am denying defendants' motion to dismiss. I agree that several paragraphs of the affidavits that plaintiff submitted in support of the motion for conditional certification are not based on personal knowledge and should be stricken. I also am not satisfied that the two affidavits adequately support the conditional certification of either a statewide or nationwide collective action. Therefore, I will reserve ruling on the motion for conditional certification and allow plaintiff four weeks in which to file further evidence in support of a collective action. Because I find that defendants' objections to Hauser's expert report go to its weight and not its reliability, I am denying the motion to strike the report. Finally, because defendants have not objected to plaintiff's filing a second amended complaint, I will permit him to do so. However, plaintiff did not seek leave of court to file a second amended complaint before the motion to dismiss and the motion for conditional certification were filed. Therefore, I did not consider the allegations in the second amended complaint in ruling on those motions.

Before I address the parties' arguments, I will summarize the relevant allegations contained in plaintiff's first amended complaint and the affidavits attached to his brief in support of conditional certification.

ALLEGATIONS OF FACT

Plaintiff is a resident of Beloit, Wisconsin and has been employed by defendants as a Broadband Technician II since February 2006. Plaintiff worked at defendants' Madison, Wisconsin office for the first five months of his employment and then transferred to the Janesville, Wisconsin office. Defendants are all Delaware corporations with a principal place of business in St. Louis, Missouri. All have a joint employment relationship with plaintiff. Jesse Taylor Cone, a resident of Madison, Wisconsin, is willing to participate in this lawsuit as a named employee or party plaintiff. Cone began working for defendants as a trainee in their Madison, Wisconsin office in February 2005. Six weeks later, Cone became a Broadband Technician I. In September 2006, Cone became a Broadband Technician II. He transferred to the Baraboo, Wisconsin office in July 2007.

Defendants employ approximately 8,000 individuals in the following field positions to install, upgrade, troubleshoot and maintain cable, television, telephone and internet services in at least 40 states: Broadband Technician I, II III and V-Lead; Senior Broadband Technician; System Technician I, II, III and Lead; Senior System Technician; Installer; Installer Repair Technician; and Service Technician. These employees have company vehicles they are required to drive to various job sites as part of their regular job duties. Defendants provide prospective employees for the positions at issue with a copy of a job description that sets forth a specific range of tasks expected of them. According to a national

4

sampling, job descriptions posted online for Broadband Technician and System Technician positions state that it is an essential function of the position to "clean, maintain, stock and secure assigned vehicle and equipment" and that the "ability to drive Company vehicle in a safe and responsible manner" is a preferred qualification.   The nationwide Charter Communications employee handbook states the following:

- Employees are responsible for ensuring that the exterior and interior of the vehicle are clean at all times.

- Equipment (meters, test sets, converters, sweep gear, etc.) should be secured inside the employee's home when the vehicle is parked at the employee's home overnight.   In the event of employee negligence or failure to follow the proper safety and precautionary procedures, the employee will be responsible for lost equipment or vehicle damage that occurs on the employee's property.

- On-call technicians may use their company vehicles for transportation during off duty hours only while on-call, in order to respond quickly to an outage.   However, all limitations regarding the use of company vehicles, including the prohibition against transporting passengers, apply during on-call time.   In major outage situations, employees with company vehicles may be required to assist with system restoration efforts, even when not on-call.

- Employees are not compensated for time spent driving to and from work in a company vehicle, unless otherwise specified.

- Charter will provide any required tools and climbing equipment . . . . the proper care and maintenance of this equipment is your responsibility.

5

Plaintiff and Cone allege that they check the tire pressure, fluid levels and general condition of their assigned vehicles each day and arrange for tire replacement, oil changes and vehicle washing while "off the clock." Before July 2007, neither plaintiff nor Cone was compensated for travelling to and from work in his assigned vehicle, unloading and reloading his assigned equipment at home each day or performing the required maintenance and cleaning of his assigned vehicle. Plaintiff and Cone have to arrive forty-five minutes early each day to clean the debris from installations the day before, restock their vehicles and complete paperwork in order to complete the required number of customer calls for each day. Plaintiff spends two hours each day performing uncompensated work, which does not include oil changes or vehicle washes. When Cone worked at the Madison office, it took him 30 minutes to travel to or from work and 15 minutes to load or unload the vehicle. Cone spends about an hour each week washing his vehicle.

When either plaintiff or Cone is entitled to commissions, defendants simply add the amount of the commission to one of their pay checks and do not post the commission to the week in which it was earned. Defendants do not adjust the hourly wage for regular or overtime pay for the week in which plaintiff or Cone earns a commission. For the weeks that plaintiff and Cone are on call, defendants pay them a base compensation of $150 a week. Defendants pay them for a minimum of two hours if they are called out either before or after a regularly scheduled shift or time off.

6

Plaintiff seeks to bring his federal claims on behalf of all current and former employees of defendants (about 8,000 individuals) who engage or have engaged in the identified tasks and activities without receiving proper compensation within the past three years.  (This class includes individuals employed within the specified field positions.) Plaintiff seeks to bring his state law claims on behalf of a class of Wisconsin citizens who meet the same criteria as the federal class.  Plaintiff also seeks to bring state law claims on behalf of a subclass of the class, consisting of individuals who have performed the job duties of Broadband Technician and System Technician.

## MOTION TO DISMISS

### A.  State and Federal Claims Interaction

Plaintiff has brought his federal claims under the Fair Labor Standards Act on behalf of himself and other similarly situated employees and his state claims under the Class Action Fairness Act of 2005, which gives district courts original jurisdiction over state law class action claims in which any plaintiff and any defendant are citizens of different states, more than $5,000,000 is in dispute and the proposed plaintiff class numbers more than 100.  28 U.S.C. § 1332(d)(2) and (d)(5); Hart v. FedEx Ground Package System Inc., 457 F.3d 675, 679 (7th Cir. 2006).  Although defendants agree that plaintiff has a substantive right to bring his claims under these laws, they assert that the different procedural mechanisms

7

applicable to each statutory scheme preclude plaintiff from joining his claims in a single lawsuit in federal court.

A similarly situated employee cannot become a plaintiff in the federal action (and thus will not be bound by a subsequent judgment) "unless he gives his consent in writing to become such a party" and files his consent with this court. Thus, the federal class is known as an "opt-in" class. 29 U.S.C. § 216(b); <u>Harkins v. Riverboat Services, Inc.</u>, 385 F.3d 1099, 1011 (7th Cir. 2004) (citing same). However, plaintiff's state claims would proceed under Fed. R. Civ. P. 23, which provides that a plaintiff may sue as a representative party on behalf of an entire class if certain prerequisites are met. When a class is certified under Rule 23, every member of the class is bound by the adjudication on the merits unless he or she elects to be excluded. In other words, putative class members must "opt in" to participate, whereas putative class members in a proceeding under Rule 23 remain class members unless they "opt out."

Defendants argue that allowing an opt-in collective action under the Fair Labor Standards Act and an opt-out class action under state law in a single federal lawsuit would conflict impermissibly with congressional intent in enacting the Fair Labor Standards Act and abridge defendants' rights and those of potential class members in violation of the Rules Enabling Act, 28 U.S.C. § 2072(b) (federal procedural rules "shall not abridge, enlarge or modify any substantive right"). As defendants discuss in their supporting brief, Congress

8

adopted the opt-in model for collective actions under the Fair Labor Standards Act in the 1947 Portal-to-Portal Act with the specific purpose of limiting plaintiffs to "employees who asserted claims in their own right and freeing employers of the burden of representative actions." Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 173 (1989). According to defendants, certifying a state class would violate the Rules Enabling Act by abridging defendants' substantive right and that of putative class members to the opt-in procedure envisioned by Congress for labor claims. Defendants note that should only a few plaintiffs opt in to the federal collective action, the court might be faced with the "somewhat peculiar situation of a large number of plaintiffs in the state law class who have chosen not to prosecute their federal claims." Leuthold v. Destination America, Inc., 224 F.R.D. 462, 470 (N.D. Cal. 2004); see also Williams v. Trendwest Resorts, Inc., No. 2:05-CV-0605, 2007 WL 2429149, at *3 (D. Nev. Aug. 20, 2007).

Courts are split on whether a plaintiff can bring simultaneous federal and state class actions for the same underlying labor violations. The Court of Appeals for the Seventh Circuit has not yet addressed this issue, but the courts of appeals for the District of Columbia and the Third Circuit and several district courts have ruled on it. See Salazar v. Agriprocessors, Inc., No. 07-CV-1006-LRR, 2007 WL 3102158, at *6 (N.D. Iowa Oct. 22, 2007) (summarizing court of appeals decisions and collecting district court cases). The Court of Appeals for the District of Columbia and many district courts have held that the

9

Fair Labor Standards Act does not preclude Rule 23 class relief for state wage claims brought in federal court.  Lindsay v. Government Employees Ins. Co., 448 F.3d 416, 424 (D.C. Cir. 2006) (difference between opt in and opt out procedures do not justify declining supplemental jurisdiction over state law class claims); Salazar, 2007 WL 3102158, *9 (finding that simultaneous litigation supported by existence of novel state law issue, identical factual issues, no express prohibition of Rule 23 action in FLSA and avoiding parallel lawsuits); Brickey v. Dolencorp, Inc., 244 F.R.D. 176, 179 (W.D.N.Y. 2007) ("Rule 23 and FLSA actions are routinely prosecuted together, and the complexities . . . are a challenge that the federal judiciary, and properly instructed juries, are generally well-equipped to meet."); Marquez v. Partylite Worldwide, Inc., No. 07-C-2024, 2007 WL 2461667, *6 (N.D. Ill. Aug. 27, 2007) (denying defendants' motion to strike state class claims but cautioning that opt-out class may not be superior method under Rule 23 for resolving claims ); Westerfield v. Washington Mutual Bank, No. 06-CV-2817, 2007 WL 2162989, at *1 (E.D.N.Y. Jul. 26, 2007) (noting no legal doctrine permitting court to dismiss an action solely because it is "inherently incompatible" with another action before it); Ladegaard v. Hard Rock Concrete Cutters, Inc., No. 00-C-5755, 2000 WL 1774091, at *7 (N.D. Ill. Dec. 1, 2000) (desirable to concentrate litigation in one forum).  Like defendants, the Court of Appeals for the Third Circuit and other district courts have reasoned that allowing plaintiff to proceed with his state law class claims would thwart congressional intent by bringing unnamed parties

10

through the back door of state statutes. <u>E.g.</u>, <u>De Asencio v. Tyson Foods, Inc.</u>, 342 F.3d 301, 310 (3d Cir. 2003) (citing congressional intent, complex issues of state law and large number of state plaintiffs as reasons to dismiss state law class claims); <u>Riddle v. National Security Agency, Inc.</u>, No. 05-C-5880, 2007 WL 2746597, at *4 (N.D. Ill. Sept. 13, 2007) (dismissing state claims because allowing them would subvert congressional intent, large Rule 23 class would insure that state law claims dominate federal suit and notice discussing opting in and opting out would confuse potential class members); <u>Williams</u>, 2007 WL 2429149, at *4 (allowing both claims would permit plaintiff to "circumvent the restrictive opt in requirements of the FLSA"); <u>Ramsey v. Ryan Beck & Co., Inc.</u>, Civil Action No. 07-635, 2007 WL 2234567, at * 2 (E.D. Pa. Aug. 1, 2007) (permitting both state and federal claims would nullify congressional intent and eviscerate opt in requirement); <u>Otto v. Pocono Health System</u>, 457 F. Supp.2d 522, 523-24 (M.D. Penn. 2006) (same); <u>Moeck v. Gray Supply Corp.</u>, No. 03-1950, 2006 WL 42368, at *5 (D.N.J. Jan. 6, 2006) (same); <u>McClain v. Leon's Pizzeria, Inc.</u>, 222 F.R .D. 574, 577 (N.D. Ill. 2004) (same); <u>Rodriguez v. The Texan, Inc.</u>, No. 01-C-1478, 2001 WL 1829490, at *2 (N.D. Ill. Mar. 7, 2001) (cautioning about same).

However, none of the cases prohibiting the simultaneous adjudication of federal and state labor law claims rely on or even refer to the Rules Enabling Act. <u>Neary v. Metropolitan Property and Casualty Insurance Company</u>, 472 F. Supp. 2d 247, 250-51 (D. Conn. 2007); <u>Westerfield</u>, 2007 WL 2162989, at *1. Instead, in these cases, the courts declined to

exercise supplemental jurisdiction over the state law claims, striking or dismissing them because of the inherent incompatibility between the opt in and opt out procedures. Westerfield, 2007 WL 2162989, at *1.  In fact, as plaintiff points out, the only courts that have addressed the argument that the Rules Enabling Act prevents simultaneous litigation of state and federal class labor claims have squarely rejected it.  Id.; Farhy v. Janney Montgomery Scott, LLC, No. Civ. A. 06-3202, 2007 WL 1455764, at *1 (E.D. Pa. Apr. 26, 2007); Neary, 472 F. Supp. 2d at 250-51.

In Westerfield, the court found that "[s]ection 216(b) by its terms governs procedural rights.  It establishes the procedure to be followed to establish party plaintiff status in an FLSA action."  2007 WL 2162989, at *1.  The Courts of Appeals for the Seventh Circuit and the District of Columbia also seem to have construed the collective action opt-in provision of § 216(b) as a procedural right.  See Lindsay, 448 F.3d at 424 (finding that "mere procedural difference" between opt-in and opt-out procedures does not prevent exercise of supplemental jurisdiction over state law labor claims); King vs. General Electric Company, 960 F.2d 617, 621 (7th Cir. 1992) (section 216(b) "procedure preempts the class action procedure under Federal Rule of Procedure 23" in FLSA claims).

Like the defendants in Westerfield, defendants in this case support their Rules Enabling Act argument with an amicus letter submitted by the Secretary of the United States Department of Labor in support of a federal court action to vacate an arbitration award.

12

Dkt. #12, Exh. A, Dec. 13, 2005 Amicus Letter from Secretary of Labor in <u>Long John</u> <u>Silver's Restaurants, Inc. v. Cole</u>, 409 F. Supp. 2d 682 (D.S.C. 2006).  In the letter, the Secretary stated that "the right to participate in a collective action only upon submission of one's written consent is a substantive right, and therefore cannot be waived."  <u>Id.</u>  However, as noted by the court in <u>Westerfield</u>, this statement was made "in the context of a case in which the arbitrator refused to apply the opt-in requirement of § 216(b)."  <u>Westerfield</u>, 2007 WL 2162989, at *1.  For that reason, it does not clearly establish that the opt-in provisions of § 216(b) provide a substantive right within the meaning of the Rules Enabling Act.  <u>Id.</u>

Even if the right to opt in is substantive, that right is not modified or abridged in any way by permitting a state law opt-out class to proceed alongside the federal opt-in collective action in the same case.  <u>Westerfield</u>, 2007 WL 2162989, at *1.  As defendants recognize, the Fair Labor Standards Act does not preempt Wisconsin wage and hour laws.  29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law . . .").  Plaintiff's state law class action claims could proceed separately from the federal action in this court pursuant to the Class Action Fairness Act.  Although including the federal and state law claims in the same lawsuit will pose challenges, I am not persuaded that separate adjudication of these claims will reduce confusion among potential class members who would still receive two notices concerning almost identical facts: one requiring them to opt in to a federal collective action and another

13

including them in a state law class action unless they opt out.  See Cryer v. InterSolutions, Inc., 2007 WL 1191928, at *3 (Apr. 20, 2007).  Clearly drafted collective and class action notices should help alleviate confusion in this case.

Accordingly, any injury to the rights of potential plaintiffs under the Fair Labor Standards Act caused by having these actions proceed together rather than separately would be minimal.  As this case proceeds, other considerations of predominance of individual issues or superiority under Rule 23 may counsel against certifying a class, but the records contains insufficient information to make this determination at this stage.  Defendants may challenge class certification again after they complete more discovery.

## B.  Rule 23 Prerequisites

Defendants contend that plaintiff's state law claims fail to meet the requirements of Rule 23 for certifying class actions as a matter of law.  Fed R. Civ. P. 23(a) sets forth the following prerequisites for filing a class action: 1) numerosity; 2) commonality; 3) typicality; and 4) adequate representation.  Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998); Rosario v. Livaditis, 963 F.2d 1013, 1017 (7th Cir. 1992).  In addition, the action must qualify under one of the types of class actions listed in Rule 23(b).  Id.  These prerequisites must be alleged in the complaint at the time of its filing and must be established before the court can certify a class under Rule 23(c).

14

Plaintiff has not yet moved for class certification, and at the time that defendants filed their motion to dismiss, there had been no discovery.  Because defendants challenge class certification solely on the basis of the allegations in the complaint, the proper standard is the same as that applied in deciding a motion to dismiss for failure to state a claim. Bessette v. Avco Financial Services, Inc., 279 B.R. 442, 450 (D.R.I. 2002) ("At this stage, the burden is not on the party seeking class certification, rather, as the non-moving party, all reasonable inferences must be construed in his favor."); Bryant v. Food Lion, Inc., 774 F. Supp. 1484, 1495 (D.S.C. 1991) (when defendants contend that class certification is precluded as matter of law, defendants bear burden of demonstrating it will be impossible for plaintiffs to prove facts supporting class certification); 3 Herbert Newburg & Alba Conte, Newberg on Class Actions § 7:22 (4th ed. 2007) ("where defendants contend that certification is precluded as a matter of law before the filing of [the] certification motion, defendants bear the burden of demonstrating that on the face of the complaint, class certification is impossible"); see also Blihovde v. St. Croix County, Wis., 219 F.R.D.607, 613 (W.D. Wis. 2003) (noting Bessette and Bryant stand for "unremarkable proposition" that where no discovery has been undertaken and class challenges are based solely on complaint, proper standard is same as motion for dismiss for failure to a state claim).

When considering a Rule 12(b)(6) motion, the court must accept as true all the allegations in the complaint and construe all reasonable inferences in favor of the plaintiff.

<u>Murphy v. Walker</u>, 51 F.3d 714, 717 (7th Cir. 1995). In order to state a claim, plaintiff must allege facts that plausibly suggest he is entitled to relief. <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965 (2007). In <u>Bell Atlantic</u>, the Supreme Court made clear that "it is not enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" <u>E.E.O.C. v. Concentra Health Services, Inc.</u>, 496 F.3d 773, 777 (7th Cir. 2007) (emphasis in original) (quoting <u>Bell Atlantic</u>, 127 S. Ct. at 1965, 1968-69). Although <u>Bell Atlantic</u> "did not signal a switch to fact-pleading in the federal courts . . . at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." <u>Airborne Beepers & Video, Inc. v. AT & T Mobility LLC</u>, 499 F.3d 663, 667 (7th Cir. 2007) (citing <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007)).

Defendants do not deny that plaintiff has alleged the prerequisites of Rule 23. Instead, they assert that plaintiff cannot show facts to suggest that he can meet the requirements of Rule 23(a) and (b)(3). Defendants argue that because potential class members can join their claims in a collective action under the Fair Labor Standards Act, joinder is practicable. Fed. R. Civ. P. 23(a)(1). They assert that because the proposed class members are employed in more than ten different positions and at various Charter locations with individual employment practices, plaintiff cannot establish that his claims are common

16

to or typical of those of the proposed class. Fed. R. Civ. P. 23(a)(2). Defendants also contend that plaintiff cannot demonstrate that class issues predominate over individual ones or that a class action is superior to other available methods of adjudication under Rule 23(b)(3).

Accepting all of plaintiff's allegations as true and construing all reasonable inferences in favor of plaintiff, I find that plaintiff has pleaded sufficient facts to suggest that it is plausible that he will meet the requirements for class certification. Defendants' circular reasoning does not persuade me that plaintiff is not likely to satisfy the requirements of Rule 23(a)(1). As plaintiff points out, his state claims are separate from his Fair Labor Standards Act claims. Further, although plaintiff seeks to "join" his federal claims with other potential plaintiffs in a collective action under § 216(b), it would still be a representative action like that under Rule 23. Defendants' assertions relating to commonality and typicality may be shown to be correct eventually, but it is plausible that plaintiff's claims are typical of those of the proposed class and involve questions of law and fact common to the proposed class. Similarly, after the parties complete further discovery, defendants may convince the court that individual issues predominate over class ones and that a class action is not superior to other available methods of adjudication. However, at this point, plaintiff has made allegations sufficient to show that class issues predominate and a class action would be the best means of resolving them. Defendants' motion to dismiss is denied.

17

MOTION FOR CONDITIONAL CERTIFICATION
AND RELATED MOTIONS TO STRIKE

A.  Legal Framework

It is well established that, in appropriate cases, district courts have the discretion to implement the opt-in provision of 29 U.S.C. § 216(b) by facilitating notice to potential plaintiffs in a collective action under the Fair Labor Standards Act.  Hoffman-La Roche, 493 U.S. at 169; see also Woods v. New York Life Insurance Company, 686 F.2d 578, 580 (7th Cir. 1982) (district courts have "modest duty" to "regulate the content and distribution of the notice to potential class members").  Authorization of notice serves the broad, remedial purpose of the statute and comports with the court's interest in managing its docket. Hoffman-LaRoche, 493 U.S. at 172-74.    The critical inquiry in determining whether a court should exercise its discretion to authorize the sending of notice to potential plaintiffs is whether the representative plaintiff has shown that she is similarly situated to the potential class plaintiffs.  The Fair Labor Standards Act does not set out a method for determining whether potential plaintiffs are similarly situated to a representative plaintiff and neither the Supreme Court nor the Court of Appeals for the Seventh Circuit has provided any guidance on the question.   However, numerous other federal courts have employed a two-step approach.  See generally Thiessen v. General Electric Capital Corp., 267 F.3d 1095, 1102-05 (10th Cir. 2001) (describing two-step method and affirming district court's use of it); Hipp

18

v. Liberty National Life Insurance Company, 252 F.3d 1208, 1217-19 (11th Cir. 2001) (finding two-step method effective and suggesting district courts adopt it); Heckler v. DK Funding, LLC, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007); Underwood v. NMC Mortgage Corporation, Civ.A. No. 07-2268-KHV, 2007 WL 2769662, at *3 (D. Kan. Sept. 24, 2007); Lewis v. National Financial Systems, Inc., Civ. Action No. 06-1308, 2007 WL 2455130, at *2 (E.D.N.Y. Aug. 23, 2007); Parker v. Rowland Express, Inc., 492 F. Supp. 2d 1159, 1163-64 (D. Minn. 2007); Gambo v. Lucent Technologies, No. 05-C-3701, 2005 WL 3542485 (N.D. Ill. Dec. 22, 2005); Clarke v. Convergys Customer Management Group, Inc., 370 F. Supp. 2d 601 (S.D. Tex. 2005).

In the first step, which occurs early in the case, the plaintiff must demonstrate a reasonable basis for believing that he is similarly situated to potential class members. Clarke, 370 F. Supp. 2d at 604; Flores v. Lifeway Foods, Inc., 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003); Kane v. Gage Merchandising Services, Inc., 138 F. Supp. 2d 212, 214 (D. Mass. 2001). If the plaintiff makes this showing, the court conditionally certifies a class, authorizes notice and the parties conduct discovery. Bell v. Mynt Entertainment, LLC, 223 F.R.D. 680, 682 (S.D. Fla. 2004). At the close of discovery, defendants may make a motion for decertification, at which point the court examines in detail the evidence and arguments submitted by the parties on the question of similar situation. Gambo, 2005 WL 3542485 at *4; Flores, 289 F. Supp. 2d at 1045. If the court finds that any of the opt-in plaintiffs are

19

not similarly situated to the representative plaintiff, it may dismiss them without prejudice. Also, the court may decertify the entire class if none of the class members are similarly situated. Kane, 138 F. Supp. 2d at 214. However, if the plaintiff demonstrates that the class members are similarly situated, the case proceeds to trial as a class action. Id. As in Austin v. Cuna Mutual Insurance Society, 232 F.R.D. 601, 605 (W.D. Wis. 2006), I will adopt this framework for the purpose of determining whether plaintiff should be allowed to notify potential plaintiffs of his lawsuit.

## B. Propriety of Notice

As noted above, courts may authorize the sending of notice where a plaintiff makes a colorable showing that other individuals are similarly situated. Because this case is in its early stages, plaintiff's burden is not a high one. Courts have held that plaintiffs can meet their burden by making "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (citations and quotations omitted); see also Gambo, 2005 WL 3542485 at *4; Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997). Put another way, a plaintiff must demonstrate that there is some factual nexus that connects him to other potential plaintiffs as victims of an unlawful practice. Clarke, 370 F. Supp. 2d at 605; Heagney v. European American Bank,

20

122 F.R.D. 125, 127 (E.D.N.Y. 1988).  In determining whether plaintiffs have met their initial burden, courts rely on the complaint and any affidavits that have been submitted. Mooney v. Aramco Services Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995); Bell, 223 F.R.D. at 682.

Plaintiff seeks to bring his federal claims on behalf of all current and former employees of defendants (about 8,000 individuals) who engage or have engaged in certain tasks and activities without receiving proper compensation within the past three years. Defendants argue that this case is not appropriate for class treatment because the proposed class is overbroad and unmanageable, including more than 8,000 individuals employed or formerly employed in 26 different field service positions in hundreds of different locations across the United States.  They assert that individual issues predominate because every employee has or has had a different practice with respect to commuting, recording time and performing job tasks; the Employee Commuting Flexibility Act provides that time spent commuting to work is not compensable unless commuting is part of the employee's principal activities and there are employees who were not required to commute in their Charter vehicles; the Motor Carrier Act does not require employers to pay overtime for interstate travel in company vehicles of a certain weight and there are employees to which this exemption applies; and many employees engage in activities that are so sporadic or brief as to be *de minimus* and therefore not compensable under the FLSA.  Defendants also contend

21

that potential class members who are now supervisors would have an inherent conflict of interest because they are now enforcing the very policies that they would be challenging as a former employee.  In support of their arguments, defendants have filed more than 60 affidavits and have devoted several pages in their brief to explaining the job duties, responsibilities, commuting practices and compensation of various field service employees across the country.

Although the above information provided by defendants could be relevant at a later stage of the proceedings, the proper focus at this stage is on plaintiff's submissions, which consist of the complaint and his supporting affidavits.  See Gambo, 2005 WL 3542485 at *4 ("The possibility of a fact-intensive inquiry into whether all members of the putative opt-in class are in fact similarly-situated does not preclude authorizing notice, although the need for such an analysis might weigh against or defeat certification of an actual class (or influence the form of any eventual certified class) at the second stage.")  Defendants argue that sufficient discovery has occurred in the last few months from which the court can conclusively determine certification of the collective action.  However, defendants' detailed arguments about the predominance of individualized inquiries and the dissimilarities between plaintiff and other employees are best raised after the parties have conducted further discovery and can present a more detailed factual record for the court to review. Clarke, 370 F. Supp. 2d at 606-07; see also Herrera v. Unified Management Corp., No. 99

22

C 5004, 2000 WL 1220973, at *2 (N.D. Ill. Aug. 18, 2000) (more efficient to prune class members at later stage than to restrict class at start and expand at later stage).

Relevant to this stage of the court's inquiry, however, is defendants' challenge to the sufficiency of the two affidavits submitted by plaintiff and Cone in support of a nationwide collective action.  Defendants also contend that several paragraphs of the affidavits are inadmissible and have moved to strike them.  I will start with the motion to strike.

### C.  <u>Motion to Strike Affidavits</u>

Defendants have moved to strike paragraphs 11, 19 and 22 of plaintiff's affidavit and paragraphs 11-17 and 19 of Cone's affidavit on the grounds that they 1) are not based on the affiants' personal knowledge; 2) constitute or rely on hearsay; 3) contain conclusory allegations, speculation and unsupported personal beliefs; or 4) directly and materially conflict with the affiants' deposition testimony.  Dkt. #40, Exh. E.  Defendants assert that under Fed. R. Civ. P. 56(e), an affidavit submitted in support of conditional certification must be made on personal knowledge, set forth facts that would be admissible in evidence and show that the affiant is competent to testify on the matters stated in the affidavit.

Plaintiff contends that Rule 56(e) is applicable only to affidavits supporting and opposing motions for summary judgment.  He further asserts that in the first step of the two-step process for certifying a collective action under the Fair Labor Standards Act, he must

23

demonstrate only a reasonable basis for believing that he is similarly situated to other potential class members.  Therefore, according to plaintiff, affidavits submitted in support of conditional certification need not satisfy a high evidentiary standard.  In response to defendants' specific objections to the affidavits, plaintiff argues that it would be reasonable for the court to infer from his and Cone's first-hand observations and personal experiences that other employees were treated similarly with respect to the tasks required of them and were not compensated for performing those tasks.  Dkt. #120 at 7-10.

The Federal Rules of Civil Procedure do not create a standard for reviewing affidavits submitted in support of motions other than a motion for summary judgment.  However, I disagree with plaintiff that affidavits should be held to a lesser standard when they are submitted for purposes other than summary judgment, even given the low burden on plaintiff at this stage of the proceedings.  Defendants' concerns regarding the paragraphs identified above are valid.  An affiant must testify about what he observed himself and not speculate about what he thinks happened.  Payne v. Pauley, 337 F.3d 767, 772 (7th Cir. 2003); Fed. R. Evid. 602 (witness must have personal knowledge of matter in order to testify to it).  "[A]lthough personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience.'"  Payne, 337 F.3d at 772 (quoting Visser v. Packer Engineering Associates, Inc., 924 F.2d 655, 659 (7th Cir. 1991)).

24

Plaintiff and Cone do not state how they reached their sweeping conclusions in the paragraphs identified by defendants.  Further, Cone and plaintiff admitted at their depositions that they did not have direct knowledge of what other employees did and could not identify the specific tasks performed by a given employee.  Although plaintiff and Cone may testify about what tasks they performed and how they were compensated, they cannot reasonably infer from their own practices or those of a few other employees how "95 percent of all technicians" or "all employees" were treated.  Accordingly, I am granting defendants' motion to strike paragraphs 11-19 of Cone's affidavit and paragraphs 11, 19 and 22 of plaintiff's affidavit to the extent that the paragraphs discuss the experiences of other employees.

### D.  Similarly Situated

Plaintiff alleges that potential class members all engaged in common tasks for which they were not properly compensated and defendants did not correctly calculate or pay employees commissions pursuant to the formula set forth in the Fair Labor Standards Act. Defendants allegedly require the performance of these tasks either in job descriptions, which appear substantially similar for each field position across the country, or the Charter Communications Employee Handbook, which is applicable nationwide.  Charter's employee

handbook also states that as a general rule, the company does not compensate employees for travelling to and from home to job sites.

At this point, plaintiff has submitted only his and one other Wisconsin employee's affidavit in support of his claims. Both refer generally to the tasks required in the employee handbook and indicate that they perform these tasks. Although plaintiff and Cone both allege that defendants did not compensate them for the required tasks, there is no written policy regarding compensation for the performance of vehicle maintenance or equipment related tasks. Further, the briefs and materials submitted by defendants suggest that procedures relating to company vehicles vary from location to location and that employees are compensated for vehicle and equipment related tasks provided that they correctly record the time spent performing these tasks.

Defendants also correctly point out that the Portal to Portal Act of 1947 provides that the Fair Labor Standards Act does not count hours during which the employee is "travelling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" and "activities which are preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a). Later, the Employee Commuting Flexibility Act of 1996 added the following to that section:

> For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the

employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

Id.; see also Baker v. GTE North Inc., 110 F.3d 28, 29-30 (7th Cir. 1997) (citing same and noting the statute does not define principal activities).  Although the court is not addressing the merits of plaintiff's claims or whether specific tasks are principal or incidental, it is not clear what type of travel that plaintiff or other potential class members performed off the clock: commuting to and from home to work, traveling to and from his office to job sites, to and from his job site to home or something else.

Although the admissible portions of plaintiff's and Cone's affidavits suggest that defendants did not pay employees for certain required tasks, I am not satisfied that affidavits from only two Wisconsin employees establish that plaintiff's experience is sufficiently similar to other field service employees in Charter offices across the state and nationwide to justify a grant of class certification.  A larger and more detailed sampling of employee experiences is necessary to show that defendants had a nationwide practice of not compensating employees for required work activities related to their assigned vehicle and equipment and not correctly calculating or paying an employee's sales commissions.

Accordingly, I am allowing plaintiff four weeks, or until January 15, 2008, by which to file additional affidavits in support of his argument that he is similarly situated to other

potential class members in Wisconsin and nationwide. I will reserve ruling on plaintiff's motion for conditional certification until that time. Plaintiff should ensure that any further affidavits specifically discuss the following with respect to work allegedly performed off the clock on a regular basis: description and purpose of task; if the task is travel, where is the travel to and from; the amount of time it takes the employee to perform the task; whether the task is required by the employee handbook, management directive or some other means; and how long it takes the employee to perform the task. I am not allowing further briefing by the parties, but defendants may have until January 22, 2008 to object to the form or content of any additional affidavits submitted by plaintiff in support of conditional certification.

## E. Motion to Strike Expert Report

Plaintiff filed a report by Professor Robert Hauser, Director of the Center for Demography of Health and Aging at the University of Wisconsin-Madison, in support of his argument that potential class members are itinerant and would best be located by searching national credit agency databases using social security numbers. Hauser analyzed Public Use Micro Samples of the American Community Survey administered by the United States Bureau of Census and concluded that workers with job titles similar to those of system and broadband technicians at Charter are younger than most workers and geographically mobile.

Dkt. #17.  Hauser noted in his report that the data are broken down only by industry and occupation codes (not by employer) and that the codes are somewhat heterogeneous. Hauser limited his analysis to two occupation codes: 1) electronic home entertainment equipment installers and repairers and 2) telecommunication line installers.  Because those occupations may occur in several industries, he focused on the industry codes of "radio and television broadcasting and cable" and "internet service providers."  Hauser found that most cable workers are 25-40 years old and 40 percent of cable workers in that age range moved within the past year.

Defendants challenge Hauser's report initially on the ground that plaintiff failed to identify Hauser as an expert before submitting his testimony and failed to disclose a list of all publications authored by Hauser in the past 10 years, the amount Hauser was compensated for his testimony and a list of other cases in which he served as an expert in the past four years.  Fed. R. Civ. P. 26(a)(2)(B).  Plaintiff argues that he provided this information at the beginning of Hauser's deposition, well before expert disclosures were due.

Plaintiff violated Rule 26.  As defendants note, Rule 37 (c)(1) provides that if a party fails to provide information as required in Rule 26(a), the party may not use the information unless the failure was substantially justified or is harmless.  Plaintiff does not argue that he had a substantial justification for failing to provide the information to defendants in Hauser's report.  However, because defendants did receive the information before the start

of Hauser's deposition (albeit immediately before it started) and were able to question Hauser, the failure to disclose is harmless.  Further, the information relates only to Hauser's past publications, past testimony and compensation and not complex or substantive issues.

Defendants also assert that Hauser's report is unreliable for the following reasons:

1.      Hauser relied on general population statistics regarding age and mobility and did not confirm that Charter's workforce reflects these trends.  For example, Hauser relied on plaintiff's counsel's summary and did not review Charter job descriptions, research the cable industry or speak to plaintiff or Jesse Cone (Charter employees).

2.      Hauser did not consider other variables that may affect mobility, including gender, race, ethnicity and educational attainment.

3.      Hauser's conclusions regarding mobility are limited to one year (2006) but plaintiff argues that he is entitled to personal information about employees who were terminated up to three years in the past.

4.      Hauser did not consider the other positions at issue in this case, such as construction technicians, head end technicians and quality assurance inspectors.

5.      Hauser failed to explain how mobility in and of itself makes a person "difficult to locate."

Defendants' criticisms are valid but go to the weight and not the reliability of Hauser's report.  See Smith v. Ford Motor Company, 215 F.3d 713, 719 (7th Cir. 2000)

30

("[W]hether the expert is credible or whether his or her theories are correct given the circumstances of a particular case is a factual one that is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert. . ."); People Who Care v. Rockford Board of Education, School District No. 205, 111 F.3d 528, 537-38 (7th Cir. 1997) ("A statistical study is not inadmissible merely because it is unable to exclude all possible causal factors other than the one of interest.").  Because Hauser was candid about the scope and limitations of his report and used reliable methods to reach his conclusions, I will deny defendants' motion to strike his report.

## MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

On November 16, 2007, plaintiff filed a second amended complaint without leave of court or defendants' consent.  Dkt. #115.  After the court noted the problem in an Order entered on December 7, 2007, dkt. #139, plaintiff moved for leave to file the second amended complaint.  At the December 13, 2007 motion hearing, defendants stated that they had no objection to the second amended complaint because it was not being considered in support of the motion for conditional certification.  Accordingly, I am granting plaintiff leave to file a second amended complaint.  A copy of the complaint is attached to his motion. Dkt. #145.

31

ORDER

IT IS ORDERED that:

1.      Defendants' motion to dismiss or strike plaintiff's Rule 23 state law class allegations is DENIED;

2.      Ruling on plaintiff's motion for conditional certification is RESERVED.  Plaintiff has until January 15, 2008 to submit further evidence in support of conditional certification of a collective action.  Defendants have until January 22, 2008 to object to this evidence;

3.      Defendants' motion to strike paragraphs 11-19 of the affidavit of Jesse Taylor Cone and paragraphs 11, 12 and 22 of the affidavit of Maurice Sjoblom is GRANTED;

4.      Defendants' motion to strike the expert report of Robert Hauser is DENIED; and

5.      Plaintiff's motion for leave to file a second amended complaint is GRANTED.


Entered this 19th day of December, 2007.


BY THE COURT:

/s/

BARBARA B. CRABB
District Judge


32