UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

Maurice James Sjoblom,
on behalf of himself and a class
of employees and/or former employees
similarly situated,

Plaintiff,

v.                                                    Case No. 07-C-0451-C

Charter Communications, LLC, and
Charter Communications (CCI), Inc.
(Fict. Name), a/k/a Charter
Communications, Inc. (Corp Name),

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EXPEDITED MOTION TO COMPEL DISCOVERY

Plaintiff James Sjoblom, by and through his attorneys Gingras, Cates & Luebke, S.C. and Axley Brynelson, LLP, respectfully requests that this Court enter an appropriate order compelling Defendants to provide complete responses to certain, designated discovery requests. This motion is based on Rule 37(a), Fed. R. Civ. P., the file and record of these proceedings, and the following grounds:

### INTRODUCTION AND FACTUAL BACKGROUND

This is a civil action for monetary, declaratory and injunctive relief under the Fair Labor Standards Act ("FLSA") and Wisconsin wage and hour laws. Plaintiff Maurice Sjoblom ("Sjoblom") alleges that Defendants violated federal and state wage and overtime laws by failing to compensate him for activities that were integral and indispensable to his job. Sjoblom seeks to bring an opt-in nationwide collective action

under the FLSA and an opt-out Rule 23 class action on behalf of similarly situated employees of Defendants who were denied compensation for the same work activities. 29 U.S.C. § 216(b).

The preliminary pre-trial conference took place on October 18, 2007. Even though this lawsuit is staged as a national class action, Defendants did not request or secure any limitations or restrictions on discovery at the pre-trial conference. The Court then entered a scheduling order stating that "[t]he parties are free to take discovery as they see fit." (Doc. # 23, p. 1). As a matter of course, discovery proceeded without restrictions and pursuant to the broad criteria set forth in Rule 26(b)(1), Fed. R. Civ. P.

After a flurry of pre-trial motions, this Court has reserved ruling on Plaintiff's Expedited Motion for Conditional Certification and decided to allow Plaintiff four weeks to file further evidence in support of a collective action. In so ruling, the Court explained that "[a] larger and more detailed sampling of employee experiences is necessary to show that defendants had a nationwide practice of not compensating employees for required work activities related to their assigned vehicle and equipment . . ." (Doc. # 154, p. 27). The Court specifically requested "the following with respect to work allegedly performed off the clock on a regular basis: description and purpose of task; if the task is travel, where is the travel to and from; the amount of time it takes the employee to perform the task; whether the task is required by the employee handbook, management directive or some other means; and how long it takes the employee to perform the task." (Id. at p. 28). Notably, the Court did not set any restrictions on information that would be useful in identifying a more detailed and specific sampling of employee experiences in the Charter workforce. Clearly, national policies, the identification of decision makers, and

2

the identification of similarly situated employees within key market areas would facilitate the discovery of this critical information.

Plaintiff has already requested this information from Defendants through appropriately drawn discovery requests that have now been pending for over almost two months. See Affidavit of Timothy Edwards, ¶¶ 6, 8, Exhibit "A." On November 2, 2007, Plaintiff served Defendants with his First Set of Interrogatories, First Request for Production of Documents, and First Request for Admissions. Id. Defendants' responses were due in thirty days, or December 1, 2007. Id. Shortly before this deadline, Defendants sought an extension of time to serve their responses to discovery requests. Id. Plaintiff offered a brief extension if and only if Defendants agreed to provide complete, substantive responses to the discovery requests. Id. Counsel for Defendants accepted these conditions by not responding or objecting to them and taking advantage of the conditional extension. Id. Defendants served their responses, by mail, on December 12, 2007. Instead of providing complete substantive, responses (as they promised to do), Defendants provided limited information and refused to disclose information that would assist Plaintiff in providing "a more detailed sampling of employee experiences" within the Charter workforce. Id. at ¶ 9, Exhibit "B." In withholding the vast majority of this specific information, Defendants unilaterally declared that Plaintiff was not entitled to any information pertaining to prospective class members. Id.

Plaintiff has made a good faith and conscious effort to resolve this issue with opposing counsel before bringing this motion. Id. at ¶ 10. On December 20, 2007, Plaintiff's counsel sent defense counsel a letter offering a compromise in light of the Court's most recent order. Id. at ¶ 10, Exhibit "C." Defense counsel responded with a

3

written assurance that Charter would respond to Plaintiff's proposal by noon the following day. Id. at ¶ 11. Counsel for Defendants did not contact Plaintiff's counsel by noon, as he promised to do. Id. at ¶ 12. He has now provided a letter in which Defendants again refuse to provide any substantive discovery. Id. at ¶ 12, Exhibit "E." There, Defendants' counsel states that the Court's recent order "denied conditional certification of a class." Id. This misstates the Court's decision, which reserves ruling on this critical motion in the anticipation of additional evidence.

Plaintiff has attempted to resolve this discovery dispute prior to seeking expedited Court intervention. Plaintiff promptly filed its motion to compel following the receipt of Defendant's December 21 letter in which Defendants continue to refuse to provide discovery responses. Defendants have taken advantage of the limited time allotted to provide additional information to the Court by refusing to respond to relevant discovery requests immediately prior to the Christmas holidays. Under the circumstances, the Court should grant Plaintiff's motion for conditional certification so that the parties can proceed with discovery, thereby eliminating Defendants' improper failure to provide discovery responses at this critical time. At a bare minimum, the Court should order Defendants to immediately provide complete responses to Plaintiff's First Set of Interrogatories and First Request for Production of Documents, as fully set forth below.

## ARGUMENT

I.    **Background:  Plaintiff Has Stated A Powerful Claim For Relief Under Well-Settled Law That Requires Additional Discovery.**

There is no question that the requested discovery is relevant to Plaintiff's substantive FLSA claims. Plaintiff and the national class are seeking regular and/or overtime pay for hours between their *first* principal activity (i.e., loading equipment

4

necessary to start their jobs at the beginning of the work day) and their *final* principal activity (i.e., unloading equipment from their trucks and securing the equipment in their homes as mandated by Charter's nationwide handbook). These "book-ends" serve as a critical defining point that illustrates the strength of Plaintiff's claim in light of applicable federal law.

It is well-settled that periods of time between the commencement of an employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked. 29 C.F.R. § 790.6(a)(2007). The Portal-to-Portal Act left untouched this basic principle for determining hours worked within the "workday." Id.; see also 29 C.F.R. § 790.6(b)(defining "workday" as used in the Portal-to-Portal Act as the period between the commencement and completion of an employee's principal activity or activities, including all time within that period whether or not the employee engages in work throughout all of that period).

The Supreme Court reaffirmed the validity of the continuous workday rule in IBP, Inc. v. Alvarez, 546 U.S. 21, 28-29 (2005). Applying this rule, the Court decided that any time spent after the beginning of the first principal activity and before the end of the last principal activity, including time spent walking, is excluded from the scope of Section 4 of the Portal-to-Portal Act and, thus, compensable under the Fair Labor Standards Act. Alvarez, 546 U.S. at 30, 37. The Court noted a critical difference between walking that precedes an employee's principal activity, which falls within the scope of the Portal-to-Portal Act, and the walking at issue in the case. The walking time occurred after the workday began and before the workday ended with the donning and

doffing of protective gear, the principal activity that started and ended the employees' workdays. Id. at 34-35.

Alvarez presents a powerful principle with direct application to this case: the compensability of time spent during the continuous work day, including time spent traveling, which is outside the scope of the Portal-to-Portal Act, turns on determination of the principal activity or activities that **start and end** an employee's workday. "Principal activity or activities" includes all activities which are an "integral and indispensible part of the principal activities". Steiner v. Mitchell, 350 U.S. 247, 252-53 (1956); Alvarez, 546 U.S. at 37 (holding that any activity that is 'integral and indispensable to a principal activity' is itself a 'principal activity' under § 4 of the Portal-to-Portal Act). Steiner v. Mitchell describes the inquiries relevant to whether activities are integral and indispensible to the principal activity as including whether the activities are made necessary by the nature of the work performed; whether they fulfill mutual obligations between the employer and the employees; whether they directly benefit the employer in the operation of the business; and whether they are so closely related to other duties performed by the employees as to be an integral part thereof. Steiner, 350 U.S. at 252. The words "principal activities" are to be "construed liberally" to "include any work of consequence performed for an employer, no matter when the work is performed". 29 C.F.R. § 790.8(a)(2007). The excepting language of the Portal-to-Portal Act is intended to exclude only those activities spent predominantly in the employees' own interest and convenience, which are not required by the employer and not necessary for the performance of their duties. Dunlop v. City Elec., Inc., 527 F.2d 394, 398 (5th Cir. 1976).

In this case, Plaintiffs start their workdays loading their company vehicles with equipment they use to perform their job duties prior to traveling to their first job site and/or their assigned field office. They end their work days unloading equipment from their vehicles into their homes, as required by Charter's national handbook. The Seventh Circuit has not specifically addressed whether loading and unloading constitutes a principal activity; however, other courts addressing the question have determined loading and unloading sufficiently integral and indispensible to be a principal activity. For instance, in Dunlop, *infra*, the Fifth Circuit held that various activities performed by electricians and electrician helpers prior to their scheduled start time, including loading trucks with materials needed to perform the day's installation and repair activities, were principal activities outside the excepting language of § 4 of the Portal-to-Portal Act. The court set forth the test for determining which activities are principal and integral and indispensible parts of such activities including: (1) whether the activity is required by the employer; (2) whether the activity is necessary for the employee to perform his or her duties; and (3) whether the activity primarily benefits the employer. Dunlop, 527 F.2d at 401. Applying the test and reiterating the mandate that principal activities be liberally construed, the court concluded that loading and cleaning out the trucks were within the broad range of "principal activities" performed at the electrical company employer's request and for the benefit of the company, and as such, were compensable. Id. at 398, 400-01.

Likewise, Plaintiffs loading and unloading activities are compensable principal activities. Loading and unloading is done at Defendants' explicit direction. Defendants' employee handbook instructs Plaintiffs that equipment (meters, test sets, converters,

7

sweep gear, etc.) must be secured inside their homes when company vehicles are parked there overnight.   Employees are warned that failure to follow these safety and precautionary measures specific to company equipment results in negative consequences. See also Ballaris v. Wacker Siltronic Corp., 370 F.3d 901 (9th Cir. 2004)(determining that donning a plant uniform was a principal activity relying on provisions of the employer's handbook as weighing heavily in favor of a determination that the activity was not excluded from the Act, including provisions requiring employees to wear the uniform, explaining the reasons for the requirement, including the benefits to the company, and explaining the measures taken by the company for enforcing the requirement).  The equipment Plaintiffs load and unload is the equipment necessary for them to perform their job duties installing, upgrading, troubleshooting and maintaining Defendants' services.  As implicitly acknowledged in Defendants' handbook, loading and unloading the equipment into Plaintiffs' homes keeps the equipment safe from damage and theft, directly benefitting Defendants.

Applying the Supreme Court's holding in Alvarez, under the continuous workday rule, any time spent by Plaintiffs after loading their vehicles in the morning and prior to unloading their vehicles at night, including travel to and from their first and last job sites, is compensable time outside the exception of the Portal-to-Portal Act.

Despite this well-settled law, Defendants assert that Plaintiffs are not entitled to compensation for commuting time under the Employee Commuting Flexibility Act (ECFA).   Defendants' analysis ignores Plaintiffs activities' prior to their morning commute and subsequent to their evening commute.  However, Plaintiffs are doing more than simply commuting to and from job sites using company vehicles.  Plaintiffs are

**starting** their workday by performing the principal activity of loading their company vehicles; loading is the activity that starts the clock running so that any subsequent travel is compensable as part of the continuous workday.   At the back end, Plaintiffs are traveling from their last job site to complete their last principal activity of the workday, unloading their vehicles, at their home.   Unloading is the activity that stops the running of the clock; any travel prior to that time is also compensable as part of the continuous work day.   See also 29 C.F.R. § 785.38 (2007)(explaining the compensability of travel time that is all in a day's work).   Loading and unloading equipment from company vehicles is not the type of "minor tasks" considered "incidental to" the use of the vehicle for commuting.   Loading and unloading is activity made necessary by the nature of Plaintiffs' work so related to other duties performed by Plaintiffs as to be an integral part of those duties and it is activity required by Defendants primarily for Defendants' benefit, i.e., to maintain the safety and security of its company equipment.   It is "principal activity" that starts and ends Plaintiffs' continuous workday, making all time spent between the start and end of the workday, including travel time, compensable.

Plaintiff provides this legal analysis to assist the Court, at this early stage in these proceedings, in understanding the nature of Plaintiff's claims and the clear relevance of Plaintiff's requested discovery.   A nationwide handbook provision requires employees to unload and secure Charter equipment in their home at night.   Plaintiff, other affiants, and a Charter supervisor have testified that the unloading process takes ten to twenty minutes and that the loading process takes the same amount of time.[1]   The Court, in its December 19 Order, has indicated that evidence from other employees will be needed for

---

[1]   This information is on file with the Court.   See, Docs. # 116, 123 and 124, respectively.

conditional certification. Accordingly, Plaintiff's discovery is highly relevant, and immediate responses are critical to proper compliance with this Court's order.

## II.     Defendants Should Be Ordered To <u>Immediately</u> Provide Complete Responses To The Discovery Requests.

Plaintiff has served Defendants with discovery requests that are reasonably calculated towards the discovery of admissible evidence at the pre-certification stage. Defendants asked for an extension of time to provide the requested information. Plaintiff agreed to this request if and only if Defendants provided substantive responses. Defendants promised to do so and then reneged on that promise by providing cursory responses with little evidentiary value. Defendants then promised to continue negotiations in an effort to resolve these issues, yet their position has not changed. These dilatory tactics have crippled Plaintiff's ability to obtain necessary information that this Court has now requested. Defendants should be ordered to produce this information immediately and they should be sanctioned for failing to do so in the first instance.

It is well-settled that class action plaintiffs are entitled to discovery at the pre-certification stage. <u>McCray v. Standard Oil Co.</u>, 76 F.R.D. 490, 500 (N.D. Ill. 1977); <u>see also</u>, <u>See</u> Jacqueline Kalk et al., <u>Littler Mendelson on Employment Law Class Actions</u>, pp. 5-1-5-15 (LexisNexis 2007). In fact, the "failure to allow discovery, where there are substantial factual issues relevant to certification of the class, makes it impossible for the party seeking discovery to make an adequate presentation" in support of certification. <u>Chateau de Ville Productions, Inc. v. Tams-Witmark Music Library, Inc.</u>, 586 F.2d 962, 966 (2d Cir. 1978); <u>see also</u> <u>East Texas Motor Freight System, Inc. v. Rodriguez</u>, 431 U.S. 395, 405-06 (1977); <u>McRay</u> at 76 F.R.D. at 500 (existence or nonexistence of class may depend on information within employer's possession); <u>Littler Mendelson</u> at p. 5-12

(identify areas for pre-certification discovery to satisfy the FSLA collective action requirements, including "relevant training manuals, job descriptions" and the number, "if not the identities" of employees during the liability period). To make an adequate presentation at the pre-certification stage, the discovery permitted "must be sufficiently broad in order that plaintiffs have a realistic opportunity" to satisfy the criteria for certification. National Organization of Women, Farmington Valley Chapter v. Sperry Rand Corp., 88 F.R.D. 272, 277 (D.C. Conn. 1978).

Plaintiff has served Defendants with a number of targeted discovery requests that directly track the criteria for class certification under Rule 23, Fed. R. Civ. P. and 29 U.S.C. § 216(b). Specifically, Plaintiff has requested:

- Identifying information regarding prospective class members and their supervisors and/or managers (Interrogatories # 1, 2 and 3);

- Person(s) with the most knowledge regarding job duties and job descriptions of prospective class members, policies and practices regarding the payment of wages and overtime compensation to prospective class members, and the preparation and contents of Defendants' National Handbook (Interrogatories # 4-17);

- Insurance policies that cover prospective class members while they perform certain work activities for which they are not compensated (Interrogatories # 19, 20);

- Prior lawsuits or complaints regarding the payment of wages or overtime compensation for the work activities identified in Plaintiff's Second Amended Complaint (Interrogatory #21);

- Documents that describe the job duties and performance expectations for prospective class members (Requests for Production, #1, 2, and 3);

- Handbooks and other documents that set forth Defendants' policies and procedures regarding the use of a company vehicle by prospective class members (Id.);

- Documents from communications with prospective class members in connection with their job interviews and/or the work activities identified in Plaintiff's Second Amended Complaint and payment for said activities, including compensation for physical injuries suffered while performing those activities (Requests For Production, #4-9, 13 and 14), and;

- Surveys and/or questionnaires administered to prospective class members from August 15, 2007 until the present date (Request for Production, #17).

These requests are narrowly tailored and reasonably calculated toward the discovery of admissible evidence regarding the wide range of employee experiences within the Charter system.  Even though pre-certification discovery is a fundamental component of class action litigation, Defendants have refused to produce this information, and limited their disclosures to information pertaining to the class representative and opt-in plaintiffs.  Defendants have taken this stance even though they have waived their right to interpose objections by providing late responses that did not comply with the terms of an extension that they willingly accepted.  See Spurgin-Dienst v. United States, 359 F.3d 451, 457 (7th Cir. 2004)(waiver of objections by virtue of agreement); Willard v. Constellation Fishing Corp., 136 F.R.D. 28 (D. Mass. 1991); Henderson v Zurn Industries, Inc., 131 F.R.D. 560 (S.D. Ind. 1990).  The upshot is fundamental: Plaintiff's effort to obtain discoverable information regarding a "larger and more detailed sampling of employee experiences" has been effectively thwarted at a critical point in this lawsuit.  More to the point, Defendants' deliberate stonewalling has severely prejudiced Plaintiff's ability to provide relevant, discoverable information that this Court has specifically requested.  For these reasons, Plaintiffs are forced to turn to the Court for immediate relief, including the immediate conditional certification of the *FLSA national class.*

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an expedited Order certifying the *FLSA national class*, requiring Defendants to provide immediate responses to Interrogatories #1-17 and 19-21 and Request for Production of Documents #3-9, 13, 14 and 17, and to pay all of Plaintiff's reasonable costs and attorney's fees in bringing this motion.

Respectfully Submitted this 21st day of December, 2007.

GINGRAS, CATES & LUEBKE, S.C.                     AXLEY BRYNELSON, LLP


s/s_____                      s/s_____
Robert J. Gingras                                Michael J. Modl
8150 Excelsior Drive                             Timothy D. Edwards
Attorneys for Plaintiff                          Attorneys for Plaintiff
8150 Excelsior Drive                             2 E. Mifflin St., Ste. 200
Madison, WI  53701-1808                          Madison, WI  53703
(608) 833-2632                                   608-257-5661
rgingras@gcllawyers                              mmodl@axley.com
                                                 tedwards@axley.com

13