UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

Maurice James Sjoblom,
on behalf of himself and a class
of employees and/or former employees
similarly situated,

                             Plaintiff,

      v.                                                     Case No. 07-C-0451-C

Charter Communications, LLC, and
Charter Communications (CCI), Inc.
(Fict. Name), a/k/a Charter
Communications, Inc. (Corp Name),

                             Defendants.

---

**PLAINTIFF'S MOTION FOR FINAL SETTLEMENT APPROVAL AND
FOR FINAL CLASS CERTIFICATION**

---

      NOW COMES Plaintiff, Maurice James Sjoblom, on behalf of himself and a class of employees and/or former employees similarly situated, by and through his attorneys, Gingras, Cates & Luebke, S.C. and Axley Brynelson, LLP, and submits to the Court the Plaintiff's Motion for Final Settlement Approval and For Final Class Certification.

### I. GENERAL

      On August, 2007, Plaintiff James Sjoblom ("Sjoblom"), filed the present wage and hour lawsuit against Charter Communications, LLC and Charter Communications (CCI), Inc. ("Charter") in the United States District Court for the Western District of Wisconsin. Sjoblom brought claims under the Fair Labor Standards Act ("FLSA") as well as Wisconsin wage and hour law. Sjoblom brought the present action as a collective action under Section 216 of the FLSA as well as a class action under Rule 23, Federal

Rules of Civil Procedure, for claimed violations of Wisconsin's wage and hour laws.

The Court conditionally certified the national FLSA class on March 4, 2008. Following significant discovery and further proceedings, the parties reached a settlement of all claims. The settlement was for up to $24.5 million in cash and up to $4 million in Charter services. The settlement also included a stipulated certification of the Rule 23 state law wage and hour class and a stipulated final certification of the national FLSA collective action. The Court preliminarily approved the settlement on August 29, 2008.

The parties retained the services of Rust Consulting, Inc. ("Rust") to administer the settlement. On October 3, 2008, Rust mailed to the 1,256 class members a Notice and Claim/Release Form. On October 31, 2008, pursuant to the terms of the Settlement Agreement, Rust mailed to all class members a reminder card advising class members of the deadlines for: submitting Claim Forms; objecting to the settlement; or excluding the class member from the settlement. The parties agreed in the Settlement Agreement that class counsel could contact opt-in class members during the notice period but could not initiate contact with Wisconsin non opt-ins during the claim period. The parties further agreed that class counsel could respond to contacts initiated by Wisconsin non opt-ins.

The 60-day period for filing objections expired on December 2, 2008. Rust received no objections to the settlement. The 60-day period for class members to exclude themselves from the settlement expired on December 2, 2008. Rust received no requests for exclusion from any of the class members.

The class members had a 90-day period (between October 3, 2008 and January 2, 2009 in which to submit a Claim Form to Rust. The response rate by class members submitting Claim Forms has been excellent. Ninety-nine percent (99%) of Wisconsin

2

opt-in class members submitted a Claim Form. Ninety-six percent (96%) of non-Wisconsin opt-ins submitted a Claim Form. Sixty-one percent (61%) of Wisconsin non opt-ins submitted a Claim Form. The overall rate for submission of Claim Forms by all class members is 80.2%.

Class counsel believe that the settlement which this Court preliminarily approved on August 29, 2008, provides substantial benefits to class members and that the participation rate in the settlement is outstanding. Plaintiff respectfully requests that the Court grant final approval of the settlement including final certification of the national FLSA collective class and the Rule 23 Wisconsin wage and hour class.

## II. EFFORTS TO MAXIMIZE CLASS PARTICIPATION

Those class members eligible to participate in the settlement fall into three subgroups: (1) current and former Charter employees who worked in Wisconsin and filed Consent Forms to participate in the FLSA collective action ("Wisconsin opt-ins"); (2) current and former Charter employees who worked in states other than Wisconsin and who timely filed Consent Forms to participate in the FLSA collective action ("non-Wisconsin opt-ins"); and (3) current and former Charter employees who worked in Wisconsin but did not file a Consent Form to participate in the FLSA collective action ("Wisconsin non opt-ins"). The parties agreed that there would be no limitation on class counsel contacting class members in categories 1 and 2 above in order to encourage participation by these individuals in the settlement. The parties further agreed that class counsel would not initiate contact with Wisconsin non opt-ins during the claim period; however, if a Wisconsin non opt-in initiated contact with class counsel, then class counsel could discuss the settlement with that individual.

Under the terms of the Settlement Agreement, a claims-made process is being used for distribution of settlement proceeds. This means that where a class member does not exclude him or herself, a certain portion of the cash and services components of the settlement will be allocated to each such class member. Class members who do not exclude themselves from the settlement and who timely submit a Claim Form will receive their allocation of cash and services. For those class members who do not submit a Claim Form, 75% of the cash portion of the settlement allocated to that individual will be returned to Charter and the remaining 25% will be donated to charity.

**Wisconsin Opt-Ins**

There are 83 Wisconsin opt-ins in the class of 1,256. Eighty-two (82) or 99% timely submitted Claim Forms. This exceptional rate resulted from sending the Notice and Claim Form to class members on October 3, 2008; posting the Notice and Claim Form on the charterclassaction.com website; mailing a postcard reminder to class members on October 31, 2008; and class counsel calling and e-mailing Wisconsin opt-ins on multiple occasions to encourage participation in the settlement. Where class counsel lacked contact information for a Wisconsin opt-in, class counsel contacted other class members to obtain last known contact information.

**Non-Wisconsin Opt-Ins**

There are 576 non-Wisconsin opt-ins in the class. Five hundred seventy-one (571), or 96% of the non-Wisconsin opt-ins have submitted Claim Forms. This exceptional rate resulted from sending the Notice and Claim Form to class members on October 3, 2008; posting the Notice and Claim Form on the charterclassaction.com website; mailing a postcard reminder to class members on October 31, 2008; and class

counsel calling and e-mailing non-Wisconsin opt-ins on multiple occasions to encourage participation in the settlement. Where class counsel lacked contact information for a non-Wisconsin opt-in, class counsel contacted other class members to obtain last known contact information. Class counsel advised by telephone non-Wisconsin opt-ins of the settlement including an estimate of the cash and services component of the settlement which class members would receive. Class counsel recontacted non-Wisconsin opt-in class members in December, 2008 and again encouraged them to file a claim. In the final week before the close of the claim period, class counsel again contacted non-Wisconsin opt-ins to encourage participation in the settlement.

**Wisconsin Non Opt-Ins**

There are 576 Wisconsin non opt-ins. These are current and former Charter employees who worked out of Charter offices in Wisconsin and who did not opt into the national collective action and who class counsel were prohibited from initiating contact with to discuss the terms of the settlement. 354 or 61% of the Wisconsin non opt-ins submitted Claim Forms. This was the most difficult group to reach to encourage participation. Wisconsin non opt-ins were sent the Notice and Claim Form on October 3, 2008 and the reminder postcard on October 31, 2008. Class counsel promptly responded to all telephone calls or e-mails that were initiated by Wisconsin non opt-ins.

Class counsel believe that they made every reasonable effort, within the terms of the Settlement Agreement, to obtain maximum participation in the settlement. Overall, 80.2% of class members submitted Claim Forms and the overall participation level for opt-ins, (both Wisconsin and non-Wisconsin) exceeded 96%.

This is an excellent participation rate. A survey of federal FLSA/state law

collective/class action cases for the past three years, where the district court granted final settlement approval, revealed response rates ranging from 100%, *see Gilliam v. Addicts Rehabilitation Center Fund*, Case No. 05 Civ. 3452(RLE) (S.D.N.Y. Mar. 24, 2008) (FLSA and New York Labor Law claims – no claim form was required to be submitted once an individual opted into the FLSA collective action); *Quintanilla v. A & R Demolition Inc.*, Case No. H-04-1965 (S.D. Tex. May 7, 2007) (FLSA only – total opt-ins was 94; no opt-outs after receipt of notice of settlement and no objections for a response rate of 100%); and *Su v. Electronic Arts, Inc.*, Case No. 6:05-cv-131-Orl-28JGG (M.D. Fla. Sept. 20, 2006) (FLSA only – total opt-ins were 76; no objections or opt-outs were filed in response to notice of settlement for a response rate of 100%.), to a low of approximately 30%, *see Rosenburg v. Internat'l Business Machines Corp.*, Case No. 06-00430 PJH (N.D. Cal. July 12, 2007) (FLSA and New York, Kentucky and California state law claims). Of the fourteen cases surveyed, six (6) had response rates of 50% or less,[1] four (4) had response rates of 50% to 75%,[2] one (1) had a response rate of more

---

[1] *Ayers v. SGS Control Services, Inc.*, Case Nos. Nos. 03 Civ. 9078(RMB) & 06 Civ. 7111(RMB) (S.D.N.Y. Sept. 9, 2008) (FLSA claims – 49.5% response rate); *Collins v. Sanderson Farms, Inc.*, Case Nos. 06-2946; 06-3835 (E.D. La. July 9, 2008) (FLSA donning and doffing case – 40% response rate); *Adams v. Inter-Con Security Sys., Inc.*, Case No. C-06-5428 MHP (N.D. Cal. Feb. 28, 2008) (FLSA and California, Illinois and Maryland state law claims - response rate of 37%); *Lenahan v. Sears, Roebuck and Co.*, Case No. 06-3837 (3d Cir. Feb. 21, 2008) (Review of D.N.J. Case No. 02-CV-00045) (FLSA and New Jersey state law wage claims – 47% response rate); *Romero v. Producers Dairy Foods, Inc.*, Case No. 1:05cv0484 DLB (E.D. Cal. Nov. 14, 2007) (FLSA and Cal. state law – 49.5% response rate); *Rosenburg v. Internat'l Business Machines Corp.*, Case No. 06-00430 PJH (N.D. Cal. July 12, 2007) (FLSA and New York, Kentucky and California state law claims, for a response rate of approx. 30% (as characterized in the pleadings and order)).

than 75% and less than 100%,[3] and, as noted above, three (3) had a response rate of 100%.

### III. BENEFITS TO CLASS MEMBERS

The terms of the settlement provide for Charter to pay up $24.5 million in cash and $4 million in services in settlement of this matter. After reducing the gross amount of the settlement by costs, class counsel fees, settlement Claims Administrator expenses, services and the service payments to the class representative, $15,569,628.00 remains for distribution to class members who made claims. This averages $12,396.20 per class member. Of the 1,256 class members, 1007 made claims totaling approximately $12,700,000 or an average of $12,611.35 per class member.

This is an excellent result, as can be seen from a comparison with the results from some of the cases noted in the previous section. For example, in *Glass v. UBS Financial Servs., Inc.*, Case No. C-06-4068 (N.D. Cal. Jan. 26, 2007), the New York, Pennsylvania and New Jersey plaintiffs received $120 for each full or partial **month** worked during the class period (limited by each state's statute of limitations), with class members from other states receiving $75 per full or partial month worked. In this settlement, each class

---

[2] *See Gribble v. Cool Transports, Inc.*, Case no. CV 06-04863 (C.D. Cal. Dec. 15, 2008) (FLSA and state wage claims – 59% response rate); *Kakani v. Oracle Corp.*, Case No. 06-6493 WHA (N.D. Cal. Jan. 14, 2008) (FLSA and Cal. labor law claims – 69% response rate); *Bessey v. Packerland Plainwell, Inc.*, Case No. 4:06-CV-95 (W.D. Mich. Oct. 26, 2007) (FLSA and Mich. state law claims for failure to pay wages and OT re: donning and doffing, etc. – 74%); *Glass v. UBS Financial Servs., Inc.*, Case No. C-06-4068 (N.D. Cal. Jan. 26, 2007) (FLSA, New Jersey, New York, and Connecticut state law claims – response rate of 51%)
[3] *Williams v. Sprint/United Mgmt. Co.*, Case No. 03-2200-JWL (D. Kan. Sept. 11, 2007) (FLSA collective action on ADEA claims -- response rate of 90.5%).

member, on average, receives $120 **per week**. Similarly, in *Collins v. Sanderson Farms, Inc.*, Case Nos. 06-2946; 06-3835 (E.D. La. July 9, 2008), each class member received $.0913 per hour for every hour worked during the class period of June 4, 2004 through August 1, 2007. In the instant settlement, each Charter class member, on average, receives $3.00 per hour. In *Romero v. Producers Dairy Foods, Inc.*, Case No. 1:05cv0484 DLB (E.D. Cal. Nov. 14, 2007), a case involving claims under the FLSA and only one state, California, and where only 49.5% of the eligible class members responded, the settlement funds (after deductions for attorneys fees, costs and incentives to named plaintiffs) totaled $125,523.63 and were evenly distributed among the class members. With 104 respondents, each class member received $1207. In *Bessey v. Packerland Plainwell, Inc.*, Case No. 4:06-CV-95 (W.D. Mich. Oct. 26, 2007), another case in which claims under FLSA and only one state, Michigan, were made, with a 74% response rate, the total settlement fund from which class members would receive payments was $448,063. The settlement agreement allowed for a two-step calculation. The first step involved a calculation of monthly credit, depending on class membership, of $16.04 or $4.01 for each calendar month worked for a period of 31 months plus $3.92 or $0.98 for the following 12 months. This resulted, at best, in a credit of $534.28. In step 2, a ratio of an individual class member's credit was divided by the total amount credited to all class members and then multiplying the result by this ratio for the amount that individual class member will be entitled. There were 2045 class members. So, for example, if all received the step 1 maximum credit, each individual received 534.28/1,092,602.60 x $448,063 or $219. At the greatest extreme, where only one class

member was eligible for the maximum and 2044 would receive the minimum, the class member at the highest extreme received $859.20.

In addition to the cash portion of the settlement, class members who submitted Claim Forms will also receive services under the Settlement Agreement. All class members making claims will receive minimally $2,475.71 in services. Class members who worked in a covered position during the relevant time period for one to two years will receive an additional $500.00 in services; for two to three years, an additional $1,000.00 in services; and for more than three years, an additional $1,500.00 in services. If a class member does not reside within the Charter services territory at the time the class member submitted a Claim Form, the services component will be converted to cash at 50 cents on the dollar.

Class counsel believe that, under the terms of the Settlement Agreement, and based upon participation by class members in the settlement, class members are receiving substantial benefits through the settlement.

## IV. EXCLUSIONS AND OBJECTIONS

The Settlement Agreement provides that class members may exclude themselves from the settlement by following a specific procedure. This procedure was detailed in the Notice which was sent to all class members. The Notice was also posted on the charterclassaction.com website. Class members had 60 days from the October 3, 2008 mailing of the Notice and Claim Form in which to exclude themselves from the settlement. No class members have excluded themselves from the settlement.

The Settlement Agreement also provides a procedure for a class member to object to the settlement or any terms of the settlement. The procedure for raising objections was

detailed in the Notice which was sent to all class members and posted on the charterclassaction.com website. Class members had 60 days in which to raise an objection to the settlement. No class member has raised any objection to the settlement or any of its terms.

Class counsel believe that the fact that there has not been a single class member excluding him or herself from the settlement and not a single objection raised by any class member to the settlement or its terms is further indication that this is an excellent result that should be finally approved by the Court.

## V. CLASS CERTIFICATION

On March 4, 2008, the Court granted conditional certification of a collective action under Section 216 of the Fair Labor Standards Act. A Notice and Consent Form was mailed to all potential class members where an address was available and was e-mailed to all potential class members where an e-mail address was available. As a result of the Notice, 680 current and former Charter employees, inclusive of the class representative, consented to participate in the collective action. As noted above, more than 96% of the current and former employees who consented to participate in the FLSA collective action have filed Claim Forms.

In addition to the FLSA collective action, Sjoblom, on behalf of himself and other current and former Charter employees who worked in Wisconsin, brought claims under Wisconsin wage and hour law. Prior to certification of a Rule 23 class, the parties reached a settlement of all claims. In the Joint Motion for Preliminary Approval, the parties moved for and the Court granted preliminary certification of the State of Wisconsin wage and hour class under Rule 23, Federal Rules of Civil Procedure. The

basis for preliminary certification were set forth in the Joint Motion for Preliminary Approval and is incorporated herein.

Sjoblom respectfully requests that the Court, as part of the final approval of the settlement of this matter, finally certify, for purpose of settlement, the collective action which the Court conditionally certified by Order dated March 4, 2008 and the Rule 23 Wisconsin wage and hour class, which the Court preliminarily certified in its August 29, 2008 Order. The basis for final certification of the FLSA collective action and the Rule 23 Wisconsin wage and hour class is more fully set forth in the parties' joint motion for preliminary approval and incorporated herein.

### VI. SETTLEMENT ADMINISTRATIVE SERVICES/CLASS REPRESENTATIVE PAYMENTS

The Settlement Agreement provides that the parties will select a competent claims administrator. The parties agreed to retain the services of Rust Consulting, Inc. to perform settlement administration services. Rust's qualifications are set forth in the Affidavit of Jonathan Paul.

The Settlement Agreement provides that settlement administration fees incurred by Rust will be divided evenly between Charter and the gross settlement amount. Prior to retaining Rust to administer the settlement, the parties requested a proposal from Rust which Rust provided, and counsel for both the Class and Charter approved the proposal. Total administrative costs are $42,744.00 and the share of costs allocated to the class is $21,372.00. Counsel believe that the amount of settlement administrative charges is fair and reasonable. Class counsel requests that the Court approve Rust as settlement administrator and that the Court approve the amount of $21,372.00 as settlement claims

administrator expenses for Rust.

Maurice James Sjoblom has been Plaintiff and has served as class representative throughout these proceedings. Sjoblom has done an exemplary job of representing the interests of the class members. Class counsel request that the Court approve Sjoblom as class representative in this matter.

Counsel for the parties also request approval of certain amounts for the class representative. First, as is common in collective and class actions, counsel request a service payment for the class representative for the significant assistance Sjoblom provided with the litigation. Counsel request a service amount of $50,000.00 for Maurice James Sjoblom. This amount is not opposed to by Charter and there has been no objection by any class member to this amount. Mr. Sjoblom provided exemplary assistance during the course of the litigation as is more fully described in the Petition for Preliminary Approval. Counsel for the parties believe that the class representative service fee of $50,000.00 is fair and reasonable and Plaintiff requests final Court approval of this amount.

As a condition of settlement, Sjoblom agreed to resign employment with Charter and to release all claims he has against Charter. In consideration for his resignation and release of all claims, Sjoblom is to receive two years of pay at his current rate and 18 months of COBRA continuation coverage paid for by Charter. The severance amount is valued at $56,160.00 and the COBRA continuation amount is valued at $5,845.50. Plaintiff requests final Court approval of service payments to the class representative of $112,010.00.

### VII.  COSTS AND ATTORNEYS FEES

On October 17, 2008, Class Counsel filed their Petition for class counsel's Costs and Attorney's Fees.

Class counsel provide the following final accounting of costs and attorneys' fees. Class counsel reasonably and necessarily incurred costs in the amount of $482,150.40 from the start of the case through December 20, 2008.  Class counsel submitted an itemization of costs to the Court in the Declarations of Attorneys Robert Gingras and Michael Modl.  Since those Declarations were submitted, class counsel has incurred additional costs in the amount of $6,150.48 relating to obtaining participation by class members in the settlement.  Please see supplemental Declarations of Attorneys Robert Gingras and Michael Modl for an itemization of further costs incurred in prosecuting this matter.  Class counsel will not seek further reimbursement for any additional costs incurred after December 20, 2008.  Class counsel will be responsible for payment of all such additional costs.  The total costs of $482,150.48 are reduced by $129,301.20 for purposes of determining attorneys' fees and class member cash distributions. Accordingly, class counsel request that the Court award costs in the amount of $352,849.28.[4]

Pursuant to the terms of the Settlement Agreement, attorneys' fees for class counsel are calculated by reducing the $28.5 million gross settlement amount by costs of

---

[4] Total Costs of 482,150.48 were reduced by $129,301.20 representing those amounts paid by Charter to Plaintiff, either by Court Order or voluntarily, during the course of the litigation.

$352,849.28 and then multiplying that amount by 30%.[5] Accordingly, class counsel are requesting attorneys' fees in the amount of $8,444.145.22. Class counsel has set forth in the parties' Petition for Preliminary Approval justification warranting a fee award of 30%. That justification is incorporated herein.

Since filing their Petition for Class Counsel's Costs and Attorney Fees, class counsel have diligently worked to achieve maximum participation in the settlement. Over 96% of the 600 opt-in members submitted Claim Forms and more than 800 of all class members submitted Claims Forms. Since submitting the fee petition, class counsel have spent several hundred additional hours related to settlement administration in efforts to assure maximum participation in the settlement by class members. See Supplemental Declarations of Attorneys Robert Gingras and Michael Modl.

The attorney fee component of the settlement was disclosed to class members in the class notice that was mailed to all class members and placed on the charterclassaction.com website. There has been no objection by any class member to the attorney fee component of the settlement. The attorneys' fee requested by class counsel is consistent with what is awarded in similar cases and is further justified by the exceptional result that class counsel obtained on behalf of the class. Class counsel accordingly respectfully request that the Court approve, as class counsel fees, the amount of $8,444.145.22.

---

[5] The Fee Agreement between James Sjoblom and class counsel provided for an attorneys' fee of 30% of the gross settlement amount of $28.5 million. Class counsel agree to reduce class counsel fees as discussed above.

**CONCLUSION**

For the reasons set forth above, the parties respectfully request that the Court enter an order and judgment granting final approval of the settlement of this dispute on the terms set forth in the Settlement Agreement between the parties and for the amounts set forth above and that the Court grant final approval of the FLSA collective action class and the Rule 23 Wisconsin wage and hour law class on the grounds set forth above.

Respectfully submitted this 26th day of January, 2009.

| | |
|---|---|
| GINGRAS, CATES & LUEBKE, S.C. | AXLEY BRYNELSON, LLP |
| /s/ | /s/ |
| Robert J. Gingras | Michael J. Modl |
| Michael J. Luebke | Steven S. Streck |
| 8150 Excelsior Drive | Timothy D. Edwards |
| Attorneys for Plaintiff | Attorneys for Plaintiff |
| 8150 Excelsior Drive | 2 E. Mifflin St., Ste. 200 |
| Madison, WI 53701-1808 | Madison, WI 53703 |
| (608) 833-2632 | 608-257-5661 |
| gingras@gcllawyers.com | mmodl@axley.com |
| luebke@gcllawyers.com | sstreck@axley.com |
| | tedwards@axley.com |

## CERTIFICATE OF SERVICE

I, Karen M. Iordachescu, hereby certify that on January 26, 2009, I electronically filed the following with the Clerk of Court, using the ECF Filing system, which will send notice to all counsel of record.

1. Plaintiff's Motion For Final Settlement Approval and for Final class Certification;
2. Supplemental Declaration of Robert Gingras;
3. Supplemental Declaration of Michael J. Modl;
4. Declaration of Jonathan Paul;
5. Final Order; and
6. Judgment.

/s/ Karen M. Iordachescu_____

F:\EAFDATA\14477\61325\00491396.DOC